IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MB FINANCIAL BANK, N.A., | ) |
| Plaintiff, | ) |
| v. | ) Hon. Blanche M. Manning |
| PLANET AIRWAYS, INC., et al. | ) No. 04 C 0893 |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff MB Financial Bank, N.A. ("MB") brought this diversity action to recover an unpaid balance on a loan it made to Defendant Planet Airways, Inc. ("Planet"), which was guaranteed by Defendants Trans Continental Airlines, Inc. ("Trans Continental") and Louis J. Pearlman ("Pearlman") (collectively, the Guarantors"). After this Court DENIED Defendants' motion to dismiss or to change venue, Defendants filed their answers, affirmative defenses, and counter claims. MB now brings the instant motions to dismiss and to strike Defendants counterclaims and affirmative defenses [36-1 and 47-1]. For the reasons set forth herein, the Court GRANTS these motions.

## BACKGROUND[1]

This action stems from a loan in the amount of $5,029,485.89 ("the Loan") which MB made to Planet. The terms of the Loan are memorialized in a Term Promissory Note ("the Note") and a loan agreement ("the Agreement"), executed by both parties, which list MB as the lender and Planet as the borrower. Paragraph 3.1(a) of the Agreement states that the Loan "is being made to refinance the purchase by [Planet] of two Boeing 727-223's, and engines thereto and accompanying parts." These plane and parts were also to be used as collateral for the Loan. (Id. at ¶ 4.1.)

Under the Agreement, Pearlman and Trans Continental each signed an agreement guarantying on the Note ("the Guaranties"). Trans Union and Planet are "affiliated" companies in that Pearlman has a large ownership interest in both companies. Pearlman is the co-founder of Planet and owner of one-third of its stock. He is also the chairman of Trans Continental and its majority owner.

After the above agreements were executed on October 25, 2002, MB disbursed $5,029,485.89 to Planet. Under the Note, Planet was required to pay MB principal and interest in the amount of $102,582.66 each month. All seemed to be going well until November of 2003, when Planet stopped making the required payments. Pursuant to the Agreement and the Guaranties, MB then sent notice of Planet's default and a demand for payment to the Guarantors. After failing to get Defendants to comply with their contractual obligations, MB brought this

---

[1] The facts in the Background section are drawn from: (1) the Amended Complaint and the exhibits attached thereto and incorporated by reference therein; (2) the Answer, Affirmative Defenses and Counterclaim of Trans Continental and Pearlman and the documents incorporated by reference therein; and (3) the Answer and Affirmative Defenses of Planet.

action seeking $4,181,851.12 in outstanding principal, $93,917.32 in interest, and $15,387.39 in accrued late charges.

After this Court denied Defendants' motions to dismiss and for change of venue, Defendants filed their answers, counterclaims and affirmative defenses. In their joint Answer, the Guarantors contend that they were "fraudulently induced [by MB] to execute the Guaranties . . . based on false written and oral representations." According to Guarantors, they were led to believe, both by the Agreement and orally by MB, that the "majority of the proceeds of the Loan" were for the purchase of the two planes. In actuality, however, Guarantors allege that total cost of the two planes and the parts was at most only $2,620,000. They also allege that this conduct violated MB's "duty of good faith implied" in the Guaranties. Consequently, Guarantors seek an order from this Court "[d]eclaring that the Guaranties are void and unenforceable."

Planet also filed an Answer asserting "failure to mitigate" as an affirmative defense. According to Planet, MB failed to perform all of its obligations under the Note and the Agreement and breached the "implied covenant of good faith and fair dealing" by:

> failing and refusing to communicate with Planet in a manner that would have allowed [MB] to ascertain Planet's financial condition and ability to fulfill its obligations. [MB] also failed and refused to investigate or independently ascertain Planet's financial condition and ability to fulfill its obligations. In addition, [MB] stonewalled all attempts by Planet to discuss the terms of the Note and Loan Agreement and refused to consider any modifications regardless of the effect a modification may have had on [MB]. This intransigent conduct prevented [MB], as of the time that [it] accelerated all of Planet's remaining obligations in or about January 2004, from making a good faith determination as to the prospect of Planet fulfilling its obligations and likewise prevented [MB] from making a good faith determination as to whether [the Loan] had become insecure.

Based on this alleged conduct, Planet requests that this Court enter judgment in its favor.

MB now comes before this Court seeking to dismiss and/or strike the above affirmative

3

defenses and counterclaims. The Court will discuss these motions as they relate to the Guarantors and Planet.[2]

After reviewing the parties' submission, this Court finds that the Guarantors expressly and impliedly waived their claims that they were fraudulently induced into entering the Guaranties or that MB breached its duty of good faith. Under Illinois law, guarantors may waive their potential defenses in an action for payment on the loan which they guaranteed. See Continental Bank, N.A. v. Everett, 760 F. Supp. 713, 721 (N.D. Ill. 1991). Such waiver may occur based on an express provision in the guarantee or through the action (or inaction) of the guarantor. See id. at 717-721. When signing a guarantee, the guarantor has "an obligation to make an inquiry into all circumstances that are relevant to their risks as guarantors." Id. at 717-18. The lender does not have a duty to disclose facts which are "readily available from other sources." Id. Consequently, absent a showing that the lender actively concealed relevant information, where the guarantors fail to make an "inquiry into the facts affecting their risk; their failure to do so precludes them from complaining of [the lender's] failure to disclose." Id. at 718. This rule "is especially true" where the guarantor has an ownership interest in the borrower or in

---

[2] In ruling on the motion to dismiss the counterclaim, this Court applies the same standard as a motion to dismiss pursuant to Rule 12(b)(6). See Carothers v. Starbucks Coffee Co., No. 96-C-3849, 1998 WL 325262, *7 (N.D. Ill. June 11, 1998). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), this court must presume all well-pleaded allegations of the complaint are true. See Miree v. Dekalb County, 433 U.S. 25, 27 n. 2 (1977). A motion to dismiss pursuant to 12(b)(6) does not test whether the plaintiff will prevail on the merits, but rather tests whether the plaintiff has properly stated a claim upon which relief can be granted. This court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). With regard to the motion to strike affirmative defenses, Rule 12(f) provides that "[u]pon motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

4

the collateral underlying the loan. See Chrysler Credit Corp. v. Marino, 63 F.3d 574, 580 (7th Cir. 1995); Fidelity Mut. Life Ins. Co. v. American Nat'l Bank and Trust Co., 1994 WL 67852, at *7 (N.D. Ill. Feb. 24, 1994).

Here, Guarantors' affirmative defenses and counterclaim rest on the allegation that they were falsely led to believe, both by the Agreement and orally by MB, that the "majority of the proceeds of the Loan" were for the purchase of the two planes. They base this contention on a memorandum which MB turned over in discovery which states that the total cost of the two planes and the parts was at most $2,620,000 and not the amount of the Loan ($5,029,485.89). According to Guarantors, by not disclosing the actual cost to them, MB fraudulently induced them to guarantee the Loan and breached its duty of good faith.

After carefully examining the facts currently before it, this Court finds that Guarantors have both expressly and impliedly waived their claims for fraudulent misrepresentation and breach of duty of good faith. Paragraph 5 of Pearlman's Guarantee states that he "expressly waives and agrees not to assert or to take advantage of: . . . (d) any duty on the part of [MB] to disclose to [him] any facts it may know or may hereafter acquire regarding [Planet]." Similarly, paragraph 9.2 of Trans Continental's Guarantee states that it "acknowledges that it has not been induced to execute . . . this Guaranty as a result of, and is not relying upon, any representations, warranties, agreements, or conditions, whether express or implied, written or oral, by [MB]." Trans Continental also stated that it "acknowledges that [MB] has no obligations or duties to Guarantor under this Guaranty." (Id. at ¶ 1.6.) Therefore, this Court finds that the very terms of the Guaranties preclude Trans Continental and Pearlman from complaining about any information which MB did or did not disclose to them.

This Court also finds that the Guarantors have implicitly waived their claims by failing to make an adequate inquiry into the facts of the Loan before executing the Guarantees. Given that Pearlman owns one-third of Planet's stock and is the chairman and majority owner of Trans Continental, the Guarantors had access to all the information, and probably more, that MB had in its possession at the time of the Loan. Moreover, the document which Guarantors rely on for their contention that MB knew that the cost of the airplanes was significantly less than the Loan, was written by a third-party prior to the Loan for the purpose of assisting Trans Continental and Pearlman in securing the Loan. Thus, the information which Guarantors contend MB did not disclose to them was actually provided to them before they executed the Guarantees. Therefore, they cannot now assert claims for fraudulent misrepresentation and breach of duty of good faith against MB for allegedly not disclosing this information.

In addition, MB has moved to strike Planet's affirmative defenses on the grounds that it: (1) did not have a duty to mitigate because Guarantors unconditionally guaranteed payment of the Loan; and (2) it did not breach its duty of good faith by failing to assist Planet in curing its default. Under Illinois law, a lender does not have a duty to mitigate "where the party has unconditionally guaranteed payment on the note." Grossich v. Collet,1989 WL 81977, at *2 (N.D. Ill. July 10, 1989) (granting lender's motion to strike affirmative defense of failure to mitigate). Here, the Note and Agreement specifically provide that in the case of default that MB may immediately institute suit for repayment against Planet and/or Guarantors. (See Note at ¶ 9; Agreement at ¶ 9.1(k); Trans Continental Guarantee at ¶ 1.1; and Pearlman Guarantee at ¶ 1.) Therefore, this Court strikes the affirmative defense alleging failure to mitigate.

Similar to the failure to mitigate defense, MB also seeks to strike the portions of Planet's

Answer to paragraph 20 which alleges that MB breached its duty of good faith by accelerating the Loan before attempting to assist Planet in curing its default. Like the duty to mitigate, under Illinois law, where a party has unconditionally agreed that the Lender may sue for repayment of a loan upon default, the lender does not have a duty to assist the borrower in curing its default where it has stopped making payments on the loan. See, e.g., Watseka First Nat'l Bank v. Ruda, 552 N.E.2d 775, 781-83 (Ill. 1990); Grossich, 1989 WL 81977, at *2. Here, a year after executing the Note and Agreement, Planet stopped making the required payments. Pursuant to the Agreement and the Guaranties, MB then sent notice of Planet's default and a demand for payment to the Guarantors. When it did not receive a response, it filed suit. Planet has not cited, nor has this Court found, any authority that a lender has to actively assist the borrower in curing the default. If Planet would have come to MB with a plan for curing the default and MB rejected this plan, then this Court might examine whether there is a claim for breach of the duty of good faith. That is not the case here, however, and this Court will not impose a duty on MB which neither Illinois law nor the Note or Agreements impose. Accordingly, this Court strikes the language in the Answer to paragraph 20.

## CONCLUSION

For the reasons set forth above, this Court GRANTS Plaintiff MB's motions to dismiss and to strike Defendants counterclaims and affirmative defenses [36-1 and 47-1].

ENTER:   *[signature]*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: MAY - 4 2005